**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KENT G. SAVAGE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Case No. CIV-25-300-HE** |
| | ) |
| **DAVID ROGERS, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Kent G. Savage, a state prisoner proceeding pro se, filed a Complaint

alleging violations of his constitutional rights under 42 U.S.C. § 1983, the Religious Land

Use and Institutionalized Persons Act ("RLUIPA"), and the Oklahoma Religious Freedom

Act ("ORFA"). Doc. 1. United States District Judge Joe Heaton referred this matter to the

undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

Defendants filed a Motion to Dismiss, Plaintiff filed a Response, and Defendants filed a

Reply. Docs. 22, 26, 28.[1] For the reasons set forth below, the undersigned recommends

that the Court grant Defendants' Motion to Dismiss and dismiss the Complaint without

prejudice.

**I.    Plaintiff's Claims**

   **A.    Factual background**

Construing the well-pled allegations in the Complaint as true, Plaintiff is an inmate

in the custody of the Oklahoma Department of Corrections ("ODOC") at the Joseph Harp

---

[1] Page citations reference the Court's electronic case filing pagination.

Correctional Center ("JHCC").  He asserts that he is a member of The Church of Jesus Christ of Latter-day Saints ("LDS/Mormon Church") and belongs to a small group of inmates who attempt to follow the LDS/Mormon Church's teachings and principles.  A volunteer from the LDS/Mormon Church regularly visits the inmates and Plaintiff requested the volunteer be allowed to donate hymnals to the inmate group.  Plaintiff's request was denied by Defendant Steve Ruby on the grounds that, under ODOC policy, the only hardbound books permitted were sacred texts.  Plaintiff provided Defendant Ruby a copy of the hymnal's preface, which includes language supporting his claim the hymnal is a sacred text, and made a more formal request for the hymnals.  Defendant Ruby again denied the request on the grounds that the hymnals are not sacred texts and, therefore, not allowed under the policy allowing hardback sacred texts.  Plaintiff continued to pursue his administrative grievances on the grounds that the LDS/Mormon Church recognizes the hymnal as sacred religious text and, therefore, the hardbound hymnal was permitted under ODOC policy.   During the administrative process, Defendant David Rogers denied Plaintiff's request, as did Defendant Mark Knutson, who issued the final decision in the administrative process denying Plaintiff's request for the hymnals.  *See generally* Doc. 1 at 9-10, 13-14; Doc. 1-3.

### B.      Defendants and allegations

Defendant Ruby is the JHCC Chaplain; Defendant Rogers is the JHCC Warden; Defendant Knutson is ODOC's designee for the Administrative Review Authority ("ARA"); and Defendant Steven Harpe is the former ODOC Executive Director.  Plaintiff sues each Defendant in his official and individual capacities, claiming:

- the LDS/Mormon Church recognizes the hymnal as sacred religious text;

- Defendants' failure to adhere to the LDS/Mormon Church's decision regarding its own sacred texts is an abuse of discretion;

- in failing to accept the LDS/Mormon Church's recognition of its hymnal as sacred religious text, Defendants

    - changed the beliefs of only the LDS/Mormon Church,

    - established a "new hodge-podge religion" comprised of these modified beliefs, and

    - forced these modified beliefs on Plaintiff; and

- Defendants burdened his free exercise of religion by

    - depriving him of his religious item (hymnal), and

    - forcing him to follow the state-created "new hodge-podge religion."

Plaintiff alleges violations of the First Amendment (Establishment Clause and Free Exercise Clause); Fourteenth Amendment (equal protection); and Eighth Amendment (cruel and unusual punishment); as well as RLUIPA and ORFA. *See generally id.* at 1, 5-9, 14-16.

### C.    Relief requested

Plaintiff seeks a declaratory judgment that:

1.    Individual and distinct religions have the capability of declaring what they recognize as "sacred religious text" without government interference.

2.    Government agencies lack the authority to dictate what religions declare as their "sacred religious text."

3.    The Defendants abused their discretion in attempting to change or modify the beliefs of an already distinguished religion.

3

4.    Based upon the preface to the [LDS/Mormon] Church's official hymnal by the [LDS/Mormon] Church's highest governing authority . . ., the [LDS/Mormon] Church has factually declared that the [LDS/Mormon] Church's hymnal is "sacred religious text."

5.    Plaintiff has satisfied the requirements of showing that [the LDS/Mormon Church's] official hymn book to be classified as sacred religious text.

*Id.* at 25-26.  Plaintiff further seeks an injunction ordering Defendants to permit donation of the hardbound hymnals, as well as compensatory and punitive damages.  *Id.* at 26.

## II.    <u>Standard of Review</u>

Defendants move to dismiss the complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  Doc. 22 at 9-11.

If a defendant brings a motion to dismiss under Rule 12(b)(1), the Court must decide whether it has federal subject matter jurisdiction over the plaintiff's claim before it can decide the Rule 12(b)(6) issues.  *See Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1259 (10th Cir. 2002) ("Because the State's assertion of Eleventh Amendment immunity challenges the subject matter jurisdiction of the district court, the issue must be resolved before a court may address the merits of the underlying claim." (citation modified)).  If a defendant is successful with its Rule 12(b)(1) motion, then a court must dismiss the complaint for lack of subject matter jurisdiction.

Rule 12(b)(1) motions take one of two forms: a facial or factual attack.  *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1148 n.4 (10th Cir. 2015).  A facial attack challenges the sufficiency of the complaint's allegations.  *Id*.  In reviewing a facial

challenge, a district court must accept the allegations in the complaint as true. *Id*. In contrast, in a factual attack the moving party may go beyond the allegations contained in the complaint. *Id*. A district court may not presume the truthfulness of the complaint's factual allegations when reviewing a factual attack, and may allow affidavits and other evidence to resolve disputed jurisdictional facts. *Id*. In this case, the undersigned construes the Rule 12(b)(1) motion as a facial attack and accepts the factual allegations in the Complaint as true. *See Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010) (construing a motion as a facial challenge and applying the same standards under Rule 12(b)(1) that are applicable to a 12(b)(6) motion to dismiss).

To survive a motion to dismiss brought under Rule 12(b)(6), a petition must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). In ruling on such a motion, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (citation modified). To that end, "all well-pled factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party." *Id.* at 1136 (citation modified).

"Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) (citation modified). Further, a pro se litigant's filing must be liberally construed and

5

held to less stringent standards than pleadings drafted by lawyers. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

### III.  Analysis

Defendants move to dismiss Plaintiff's claims on multiple grounds. Except for their assertion of qualified immunity, which the undersigned finds unnecessary to address, the undersigned considers each of Defendants' arguments in turn.

### A.  42 U.S.C. § 1983

#### 1.  Official-capacity claims

Plaintiff brings claims against each Defendant in his official and individual capacities. Because Defendant Harpe is no longer the Executive Director of ODOC, the current ODOC Executive Director, Justin Farris, is substituted for all official-capacity claims against Harpe. *See Lewis v. Clarke*, 581 U.S. 155, 162 (2017) (explaining "when officials sued in their official capacities leave office, their successors automatically assume their role in the litigation" because "the real party in interest is the government entity, not the named official" (citation modified)); *see generally Hafer v. Melo*, 502 U.S. 21, 25 (1991) (explaining the difference between individual- and official-capacity claims).[2] However, for consistency with the pleadings and to reduce confusion, the undersigned will

---

[2] Defendant Harpe remains for the individual-capacity claims brought against him. *See Lewis*, 581 U.S. at 162-63 ("Officers sued in their personal capacity come to court as individuals and the real party in interest is the individual, not the sovereign." (citation modified)); *cf. AlAmiin v. Allbaugh*, No. CIV-19-106-G, 2019 WL 3003644, at *1 n.3 (W.D. Okla. July 10, 2019) (substituting newly appointing ODOC Director "for all claims raised against [prior ODOC Director] in his official capacity" and making no substitution for individual-capacity claims brought against the prior ODOC Director).

continue to refer to the official-capacity claims brought against the ODOC Executive Director as official-capacity claims against Defendant Harpe.

Defendants Ruby and Rogers are employees of JHCC, a state prison operated by ODOC. Defendant Knutson is, and Defendant Harpe was, an employee of ODOC. ODOC "is an arm of the state" of Oklahoma. *Eastwood v. Dep't of Corrs. of State of Okla.*, 846 F.2d 627, 632 (10th Cir. 1988). Suing Defendants in their official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)). Accordingly, Plaintiff's official-capacity claims against Defendants operate as claims against the state of Oklahoma. Defendants argue official-capacity claims brought against them under § 1983 should be dismissed. Doc. 22 at 13-16.

### a.    Eleventh Amendment immunity

Plaintiff's § 1983 official-capacity claims have two primary impediments to success. The first is a constitutional hurdle under the Eleventh Amendment as "an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Eleventh Amendment immunity, though, "is not absolute" and can be overcome by three exceptions. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Most relevant here, a suit against state officials may proceed under the exception in *Ex parte Young*, 209 U.S. 123 (1908), "if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek)*

*Nation*, 669 F.3d at 1166; *accord Eaves v. Polis*, 167 F.4th 1304, 1313 (10th Cir. 2026).[3]

Where a plaintiff seeks retrospective injunctive relief or monetary damages, however, the

Eleventh Amendment is a bar to suit in federal court.  *Idaho v. Coeur d'Alene Tribe of*

*Idaho*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring) ("A federal court cannot award

retrospective relief, designed to remedy past violations of federal law."); *accord Frew ex*

*rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Green v. Mansour*, 474 U.S. 64, 68-69

(1985); *Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

Here, Plaintiff seeks a declaratory judgment, injunctive relief, and monetary

damages.  His official-capacity claims seeking retrospective injunctive relief and monetary

damages should be dismissed without prejudice as barred by the Eleventh Amendment.

*See Frew*, 540 U.S. at 437 (explaining the Eleventh Amendment bars federal courts from

"award[ing] retrospective relief"); *Edelman*, 415 U.S. at 668-69 (holding the Eleventh

Amendment does not permit retroactive monetary damages against state officers); *see also*

*Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (noting that "Eleventh Amendment

immunity is jurisdictional" and dismissal should be "without prejudice").  Likewise,

Plaintiff's official-capacity claims seeking a declaratory judgment ancillary to any

---

[3] Exceptions to the sovereign immunity bar also exist where a state waives Eleventh Amendment immunity or when Congress abrogates a state's immunity. *Pettigrew v. Okla. ex rel. Okla. Dep't of Public Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013).  Those exceptions do not apply here.  Okla. Stat. tit. 51, § 152.1(B) ("It is not the intent of the state to waive any rights under the Eleventh Amendment to the United States Constitution." (citation modified)); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) ("Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.").

retrospective relief sought is also barred by the Eleventh Amendment and should be dismissed without prejudice. *See Green*, 474 U.S. at 71-73 (holding the Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past).

### b.    Person under § 1983

Plaintiff's official-capacity claims brought under § 1983 seeking retrospective relief also face the statutory hurdle that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).[4]    Accordingly, as an alternative grounds for dismissal, the undersigned recommends dismissing with prejudice Plaintiff's claims for monetary damages and retrospective injunctive relief because Defendants in their official capacity are not "persons" subject to suit under § 1983. *See Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1135 (10th Cir. 2024) (affirming a district court's dismissal with prejudice of § 1983 damages claims against the University of Oklahoma and university officials because "none of the defendants are a 'person' under § 1983" and "state officials sued in their official capacities are treated as extensions of the state rather than 'persons' subject to § 1983"); *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005) ("Mr. Neal's

---

[4] "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167 n.14, and citing *Ex parte Young*, 209 U.S. at 159-60).

official capacity claims must fail, because state officials acting in their official capacities are not 'persons' subject to liability under § 1983.").

### 2.      Defendant Harpe and Defendant Knutson

A plaintiff must allege sufficient facts to demonstrate each defendant personally participated in the alleged violation, *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976), by "identify[ing] *specific* actions taken by *particular* defendants," *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (citation modified).  A defendant must have had "direct personal responsibility for the claimed deprivation of a constitutional right." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

### a.      Defendant Harpe

Moreover, "as a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (citation modified).  "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation" by establishing "(1) personal involvement; (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  The affirmative link between the supervisor and the constitutional violation requires "more than a supervisor's mere knowledge of his subordinate's conduct." *Id.*  Also, when a plaintiff seeks to establish personal involvement through a failure to train theory, "it is not enough to allege general deficiencies in a particular training program." *Keith v. Koerner*, 843 F.3d 833, 838 (10th

Cir. 2016) (citation modified).  Rather, "a plaintiff must identify a specific deficiency in the entity's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused" the constitutional violation.  *Id.* (citation modified).

Plaintiff alleges Defendant Harpe, as ODOC Executive Director, was personally involved by designating the ARA "as a tool to protect himself from liability."  Doc. 1 at 17.  Plaintiff further alleges Defendant Harpe "failed to train the staff to resolve the issues as they present themselves," asserting staff—and in particular the ARA designee—had not been properly trained to resolve issues presented through the prison's grievance process. *Id.* at 17-18.  Other than this conclusory failure-to-train allegation, Plaintiff does not provide allegations to establish an affirmative link between Defendant Harpe and the alleged constitutional violation.  *See Clinton v. Sec. Benefit Life Ins. Co.*, 63 F.4th 1264 1275 (10th Cir. 2023) (noting a court need not accept conclusory allegations unsupported by facts).  As such, Plaintiff fails to adequately allege personal participation by Defendant Harpe.  Accordingly, the Court should dismiss the § 1983 claims against Defendant Harpe for failure to state a claim upon which relief can be granted.  *See Frederick v. Hamilton*, No. CIV-24-847-SLP, 2025 WL 2101974, at *8 (W.D. Okla. June 30, 2025) (recommending dismissal of a failure-to-train claim for insufficient allegations relating to a prison supervisor's training deficiencies) (R&R), *adopted*, 2025 WL 2098358 (W.D. Okla. July 25, 2025).

### b.    Defendant Knutson

Similarly, Plaintiff alleges Defendant Knutson, as the ARA designee, was personally involved in that he reviewed Plaintiff's grievance and "failed to advise and

correct the overstatement of authority." Doc. 1 at 18 (citing Doc. 1-3, Defendant Knutson's response to Plaintiff's grievance). However, "a denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Because Plaintiff's only allegations involving Defendant Knutson relate to the denial of his grievances, he does not properly allege personal participation against Defendant Knutson. Accordingly, the Court should dismiss the § 1983 claims against Defendant Knutson for failure to state a claim upon which relief can be granted. *See Sherratt v. Utah Dep't of Corrs.*, 545 F. App'x 744, 747 (10th Cir. 2013) (affirming dismissal of claims brought against prison officials for denial of grievances because "denial of a grievance or failure to properly investigate or process grievances, without any connection to the violation of constitutional rights alleged by the plaintiff, is not sufficient to establish personal participation for purposes of a Section 1983 claim" (citation modified)).

### 3.    First Amendment claims

Plaintiff's First Amendment claims include allegations of violations under both the Establishment Clause and the Free Exercise Clause. Doc. 1 at 5-8, 14-16.

#### a.    Establishment Clause claim

Defendants do not address Plaintiff's Establishment Clause claims. *See generally* Doc. 22 at 18-21. However, district courts have the inherent power to manage their dockets, which includes the ability to "dismiss a frivolous or malicious action even in the absence of a statutory provision." *Fournerat v. DeGiusti*, No. CIV-25-39-R, 2025 WL

12

510932, at *1 (W.D. Okla. Feb. 14, 2025) (citation modified) (citing *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 306-07 (1989); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010); *United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993)).  In particular, "a district court may dismiss a case sua sponte under Federal Rule of Civil Procedure 12(b) when it is patently obvious that the plaintiff could not prevail on the facts alleged."  *Id.* (quoting *Andrews v. Heaton*, 483 F.3d 1070, 1074 n.2 (10th Cir. 2007) (citation modified)).  As such, the undersigned considers whether Plaintiff's Establishment Clause claim can survive a Rule 12(b)(6) challenge, and finds it cannot.

Though Establishment Clause jurisprudence is not a model of clarity, "it is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which establishes a state religion or religious faith, or tends to do so."  *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (citation modified); *accord Zorach v. Clauson*, 343 U.S. 306, 314 (1952) ("[The government] may not thrust any sect on any person.  It may not make a religious observance compulsory.  It may not coerce anyone to attend church, to observe a religious holiday, or to take religious instruction.").

When considering an Establishment Clause claim, a court must consider whether the challenged state conduct is consistent with the Nation's historical traditions regarding the relationship between government and religion.  *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022).  It is well established that "government may not, consistent with a historically sensitive understanding of the Establishment Clause, make a religious

13

observance compulsory." *Id.* at 537.  In considering a claim of coercion in violation of the

Establishment Clause, a court should consider three questions:  "first, has the state acted;

second, does the action amount to coercion; and third, is the object of the coercion religious

or secular?"  *Janny v. Gamez*, 8 F.4th 883, 906 (10th Cir. 2021) (quoting *Kerr v. Farrey*,

95 F.3d 472, 479 (7th Cir. 1996)); *see also id.* at 908 (adopting *Kerr*'s three-step test).[5]

Plaintiff cannot meet the second prong of the test.  He asserts Defendants have

created a "new hodge-podge religion," and by "enforcing their beliefs on [him], they have

coerced/forced [him] to change his beliefs." Doc. 1 at 14-15.  These conclusory allegations

do not demonstrate either creation of a new religion by the state or coercion of that religion

upon Plaintiff.   Indeed, even assuming he could prevail in his argument that the

LDS/Mormon Church hymnal is a sacred text, Plaintiff does not plausibly allege ODOC's

determination that it is not a sacred text (1) creates a new religion that follows precepts of

---

[5] The Establishment Clause also "prohibits excessive entanglement between religion and government," such as when a government "pick[s] and choose[s] religions on the basis of intrusive judgments regarding contested questions of religious belief or practice." *Does 1-11 v. Bd. of Regents of Univ. of Colo.*, 100 F.4th 1251, 1270 (10th Cir. 2024) (citation modified).   Plaintiff briefly references the Establishment Clause's prohibition on governmental entanglement with religion.  Doc. 1 at 5, 6, 15.  However, Plaintiff's arguments as to entanglement are presented as claims of Defendants' abuse of discretion under ODOC policy. *Id.* at 5, 14.  An abuse of discretion is not a constitutional violation. *See Stetzel v. Lind*, No. 14-CV-01875, 2014 WL 7436284, at *3 (D. Colo. Dec. 30, 2014) ("A claim of abuse of discretion is not a constitutional claim." (citation modified)); *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008) (discussing the differences between a "constitutional transgression" and a "common law fault").  Because Plaintiff primarily argues ODOC violated the Establishment Clause when it created a new religion that it forced upon him, the undersigned better understands Plaintiff to present a coercion claim. *E.g.*, *compare Janny*, 8 F.4th at 904-08 (considering coercion claim), *with Does 1-11*, 100 F.4th at 1270-72 (considering entanglement claim).

the LDS/Mormon Church except for the sacredness of the hymnal, or (2) forces Plaintiff to change his beliefs about the sacredness of the hymnal.[6]

By way of example of state action meeting the coercion prong, the Tenth Circuit has discussed that "a choice between participating in religious programming or being sent to jail undeniably amounts to coercion." *Janny*, 8 F.4th at 909 (citation modified). In such an instance, it is "the state's responsibility" to provide an alternative "that did not involve that coercive choice." *Id.*

While it is not a plaintiff's burden to allege the state did not provide an alternative, whether an alternative was offered is factored into whether a plaintiff has shown coercion. *See id.* (considering whether an alternative had been offered when concluding the plaintiff had established coercive state action). Here, Plaintiff's Complaint makes clear that ODOC offered him an alternative that does not involve a coercive choice. He acknowledges ODOC would permit him to worship with an LDS/Mormon Church hymnal if the hardcover binding was removed. Doc. 1-3 at 4 (noting response from Defendant Ruby that "if the backs [of the hymnals] could be removed and replaced with soft cover then they would be acceptable as a donation" (citation modified)); Doc. 26 at 10; *see also* Doc. 22 at

---

[6] Even if Plaintiff could prevail in his argument that the LDS/Mormon Church hymnal is a sacred text, this would, at most, only be the basis for a claim that ODOC violated its policy permitting hardbound sacred texts. "But Section 1983 governs only alleged violations of federally-conferred rights. Accordingly, Plaintiff cannot successfully claim relief under Section 1983 for the Defendants' alleged violation of prison policies." *Koch v. Carlisle*, No. CIV-15-811-HE, 2017 WL 7175960, at *4 (W.D. Okla. Dec. 4, 2017) (citation modified) (citing *Jones v. Norton*, 809 F.3d 564, 577 (10th Cir. 2015) and *Walker v. Wilkerson*, 310 F. App'x 284, 285 n.1 (10th Cir. 2009)) (R&R), *adopted*, 2018 WL 632033 (W.D. Okla. Jan. 30, 2018).

15

19-20 ("The hymnal and all of its contents would remain fully intact and available for the Plaintiff's use, with only the hardbound cover removed.").

Therefore, even as alleged in the Complaint, Plaintiff is presented with a choice between worshipping (1) without a hardbound LDS/Mormon Church hymnal or (2) with an LDS/Mormon Church hymnal that has its hardcover removed. Such a choice is not coercive—particularly when the hymnal in question would be identical save the hardcover and Plaintiff has not alleged the hardbound cover itself is meaningful to his worship. *See, e.g., Kerr*, 95 F.3d at 479 (explaining a government exercises coercive power over an individual when his noncompliance subjects him to "meaningful penalties"); *cf. Janny*, 8 F.4th at 909 (finding coercive state action when the prison did not offer an alternative to required religious programming); *Miller v. Marshall*, 682 F. Supp. 3d 559, 577 (S.D.W. Va. 2023) (finding the prisoner adequately alleged coercion when, inter alia, his "allegations suggest that Defendants have not provided the accommodations they offered" regarding giving the prisoner secular materials instead of the required religious materials at issue).

This is not an instance in which Plaintiff plausibly alleges either creation of a new religion by the state or the state's coercion of that religion on him. *See, e.g., Huck v. United States*, No. 22-CV-00588, 2023 WL 6163615, at *8 (D. Utah Sept. 21, 2023) (granting a motion to dismiss Establishment Clause claims when the plaintiffs "fail to connect the dots between the challenged government actions" and either "the alleged establishment" of a religion or "compel[led] . . . adherence to a recognized belief or practice"). Additionally, Plaintiff acknowledges ODOC offered an accommodation—the hymnal with its contents,

minus the hardcover—that he chose not to accept.  As such, the undersigned recommends that the Court dismiss Plaintiff's Establishment Clause claims for failure to plausibly allege an unconstitutional establishment of religion.

### b.    Free Exercise Clause claim

The Tenth Circuit has addressed the Free Exercise Clause in the context of prison regulations:

> It is well-settled that inmates retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.  Yet such protections are not without reasonable limitations.  The Supreme Court has cautioned that prison inmates are also subject to the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.  Accordingly, the Court has held that a prison regulation impinging on inmates' constitutional rights is valid if it is reasonably related to legitimate penological interests.

*Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation modified) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)).

As such, "to allege a constitutional violation based on a free exercise claim," Plaintiff "must survive a two-step inquiry":

1.    Plaintiff must show that a prison regulation substantially burdened his sincerely held religious beliefs; and

2.    Defendants may identify the legitimate penological interests justifying the impinging conduct.

*Id.*  If both Plaintiff and Defendants meet their burdens, then the burden returns to Plaintiff to show Defendants' "articulated concerns were irrational."  *Id.* at n.2.  At a motion to dismiss stage, however, Plaintiff need only allege "that his request . . . was motivated by a sincerely held religious belief and that his exercise of that belief has been substantially

burdened by the government." *Williams v. Wilkinson*, 645 F. App'x 692, 699 (10th Cir. 2016) (discussing RLUIPA).[7]

Defendants do not challenge that Plaintiff relies on sincerely held religious beliefs, but argue Plaintiff does not adequately allege those beliefs were substantially burdened. Doc. 22 at 19-20. The Tenth Circuit has identified three broad ways that governmental action can impose a substantial burden on religious exercise:

> (1) requiring participation in an activity prohibited by a sincerely held religious belief, or (2) preventing participation in conduct motivated by a sincerely held religious belief, or (3) placing substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (citation modified) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).[8] The substantial pressure prong can be described as a "Hobson's choice" forcing a choice between following religious beliefs and forfeiting an important benefit or abandoning religious beliefs in order

---

[7] Defendants argue ODOC's restriction on hardbound books serves a legitimate and compelling penological interest. *E.g.,* Doc. 22 at 20. However, "it is not until the summary-judgment phase that 'the burden of proof shifts to the defendants to show the substantial burden results from a compelling governmental interest and that the government has employed the least restrictive means of accomplishing its interest.'" *Williams*, 645 F. App'x at 699 n.13 (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1318 (10th Cir. 2010)).

[8] *Abdulhaseeb* concerns claims brought under RLUIPA, but when considering whether a plaintiff has established a substantial burden on his exercise of religion under the First Amendment, a court may rely on RLUIPA jurisprudence. *Williams v. Hansen*, 5 F.4th 1129, 1134 (10th Cir. 2021) ("Anything that constituted a substantial burden under RLUIPA would also have constituted a substantial burden under the First Amendment." (citation modified)).

to obtain an important benefit. *Abdulhaseeb*, 600 F.3d at 1315-16. The Circuit has cautioned, however, "that not every infringement on a religious exercise will constitute a substantial burden." *Strope*, 381 F. App'x at 881; *accord Abdulhaseeb*, 600 F.3d at 1316.

Here, Plaintiff claims his exercise of religion was substantially burdened through governmental action (1) forcing him to practice a state-established "new hodge-podge religion" and (2) depriving him of an LDS/Mormon Church hymnal.

### i.    Coercion in practicing state-created religion

Just as Defendants do not address Plaintiff's Establishment Clause claims, they do not address his assertion that the state's creation of a new religion prevents him from freely exercising his chosen religion. *See* Doc. 22 at 18-21. However, the undersigned considers whether Plaintiff's coercion claims can survive a Rule 12(b)(6) challenge and again finds they cannot. As set forth above, Plaintiff does not plausibly allege Defendants created a "new hodge-podge religion," Doc. 1 at 15. As such, Plaintiff does not plausibly allege the creation of such religion infringes on his ability to freely exercise his chosen religion.

### ii.    Deprivation of hymnal

Liberally construing the Complaint, Plaintiff claims that depriving him of an LDS/Mormon Church hymnal infringes the free exercise of his religion. The Tenth Circuit has recognized that "depriving inmates of particular objects can substantially burden the exercise of religion." *Williams v. Hansen*, 5 F.4th 1129, 1135 (10th Cir. 2021). Defendants argue, however, that Plaintiff has not been deprived of an LDS/Mormon Church hymnal— only a hardbound version of the hymnal. Doc. 22 at 19-20 ("The hymnal and all of its contents would remain fully intact and available for the Plaintiff's use, with only the

19

hardbound cover removed."); *see also* Doc. 1-3 at 4 (Plaintiff acknowledging ODOC's offer to permit LDS/Mormon Church hymnals removed from their hardcovers); Doc. 26 at 10 (same).  The undersigned agrees.  *See* Doc. 1-1 at 3 (ODOC Policy-030117, § II(B)(5)(h), prohibiting only hardbound copies of books that are not sacred texts).

Taking Plaintiff's well-pled allegations as true, he may be inconvenienced by the policy prohibiting hardbound books (and offended that ODOC does not recognize the LDS/Mormon Church hymnal as a sacred text), but he has not plausibly alleged the prison's denial of a hardbound hymnal to him while permitting a not-hardbound hymnal substantially burdens his exercise of religion.  *See, e.g., Jabarah v. Wray*, No. 21-CV-01047, 2024 WL 816410, at *6 (D. Colo. Jan. 30, 2024) (recommending dismissal of free exercise claims when the plaintiff "does not describe how being deprived of these specific books. . . impacts his ability to practice his religion") (R&R), *adopted*, 2024 WL 810021 (D. Colo. Feb. 27, 2024); *see also Strope*, 381 F. App'x at 881 ("At a minimum the substantial burden test requires more than an inconvenience to one's religious practice." (citation modified)).

Plaintiff may access an LDS/Mormon Church hymnal without a hardcover, and he does not allege lack of a hardbound hymnal either (1) requires his participation in an activity prohibited by his religious beliefs or (2) prevents his participation in any specific religious activity.  Nor does he allege lack of a hardbound hymnal (3) presents him with an illusory choice where he forgoes either adherence to his religious beliefs or an important benefit.  Though he asserts the LDS/Mormon Church hymnal is a sacred text integral to the practice of his religion, he does not allege the specific type of binding on the hymnal

20

provides some important benefit. In considering the substantial-pressure prong in *Abdulhaseeb*, the Tenth Circuit framed the "Hobson's choice" before the plaintiff as "either he eats a non-halal diet in violation of his sincerely held beliefs, or he does not eat." 600 F.3d at 1317. Here, Plaintiff's choice can be framed as the practice of his religion either (1) without a hardbound LDS/Mormon Church hymnal or (2) with an LDS/Mormon Church hymnal that has its hardcover removed but the contents intact. The undersigned finds Plaintiff does not plausibly allege a substantial burden on his religious beliefs.

Accordingly, the Court should dismiss Plaintiff's claims under the Free Exercise Clause for failure to plausibly allege that denial of a hardbound hymnal substantially burdens his religious exercise. *See Pfeil v. Lampert*, 11 F. Supp. 3d 1099, 1113 (D. Wyo. 2014) (finding a prisoner's free exercise of religion was not prevented or substantially burdened by a prison policy that prohibited hardbound books but permitted softbound copies of each book requested), *aff'd*, 603 F. App'x 665 (10th Cir. 2015); *Wares v. Simmons*, 524 F. Supp. 2d 1313, 1320-21 (D. Kan. 2007) (finding the plaintiff had not "shown that his exercise of religion has been circumscribed or violated by virtue of the fact that he lacks possession of the Psalm book (which he has in another form) or of the book of teachings by a particular rabbi" and that "by virtue of the other religious materials and items that plaintiff is permitted to possess . . ., his religious conduct or expression is not significantly inhibited or constrained, he remains able to express adherence to his faith, and he has a reasonable opportunity to exercise his sincerely-held religious beliefs" (citation modified)).

### 4.    Fourteenth Amendment claims

Plaintiff alleges his Fourteenth Amendment rights to equal protection were violated because ODOC did not permit him "to recognize all sacred religious text identified by his designated religion[']s governing authority."  Doc. 1 at 9.  He further alleges "other designated religions are allowed this right."  *Id.*; *see also id.* at 5 (arguing "Defendants have changed the beliefs of a single religion for the inmates in the custody of the [ODOC] in more particular at JHCC").  He does not provide further details or allegations.

"To state a claim for relief under the Equal Protection clause, a plaintiff must allege the existence of purposeful discrimination against [himself], as a class of one or with respect to a group, causing an adverse effect.  Conclusory allegations without facts that refer to a particular person or persons treated differently are insufficient to state a claim." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1146 (10th Cir. 2023) (citation modified).  Plaintiff presents only conclusory allegations without facts or reference to any particular person or group that has been treated differently or specific allegations as to how treatment has differed.   Because he "fails to identify any similarly-situated individual that has been given any different or more beneficial treatment[,] his bare equal protection claims are simply too conclusory to permit a proper legal analysis." *Straley v. Utah Bd. of Pardons*, 582 F.3d 1208, 1215 (10th Cir. 2009) (citation modified).  Accordingly, the undersigned recommends dismissing Plaintiff's Equal Protection claims for failure to state a claim under the Fourteenth Amendment.  *See, e.g., Clark v. Okla. Pardon & Parole Bd.*, No. CIV-24-917-HE, 2025 WL 1577829, at *2 (W.D. Okla. June 4, 2025) (dismissing a conclusory equal protection claim).

###### 5.    Eighth Amendment claims

Plaintiff seeks compensation for violation of his Eighth Amendment right to be free of cruel and unusual punishment, alleging "the intentional emotional distress" he has been subjected to "is a violation of the 8th Amendment." Doc. 1 at 5. He claims his "additional emotional stress, loss of sleep, feeling of being intimidated and feeling of helplessness and fear of retaliation" caused by Defendants violate the Eighth Amendment and entitle him to compensatory damages. *Id.* at 16. Defendants argue Plaintiff's allegations do not plausibly reflect an Eighth Amendment constitutional violation. Doc. 22 at 24-26.

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citation modified). "A prison official who 'knows of and disregards an excessive risk to inmate health or safety' is deliberately indifferent for these purposes." *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 837). "The actual extent of any physical injury, threats or psychological injury is pertinent in proving a substantial risk of serious harm." *Id.* at 1272.

However, Plaintiff fails to allege how conduct by Defendants posed a substantial risk of serious harm due to their denial of a hardbound LDS/Mormon Church hymnal. Plaintiff's vague and conclusory allegation that he suffered "emotional stress, loss of sleep, feeling of being intimidated and feeling of helplessness and fear of retaliation," Doc. 1 at 16, does not plausibly support a showing that he has been subjected to a deprivation that is "sufficiently serious" to constitute cruel and unusual punishment in violation of the Eighth Amendment, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). As such, this claim should be

23

dismissed for failure to state a claim upon which relief can be granted. *See, e.g., Smith v. Drawbridge*, No. CIV-16-1135-HE, 2017 WL 9482173, at \*7-8 (W.D. Okla. Sept. 8, 2017) (recommending dismissal for failure to state an Eighth Amendment claim after finding the plaintiff's allegation that denial of the ability to exercise his religion caused emotional distress was not sufficiently serious) (R&R), *adopted*, 2017 WL 4776758 (W.D. Okla. Oct. 23, 2017).

### 6.   Conclusion

The undersigned recommends the Court dismiss without prejudice those claims brought under § 1983 against all Defendants in their official capacities for monetary and retrospective injunctive relief, as barred by the Eleventh Amendment. The undersigned further recommends dismissal without prejudice of all remaining claims brought under § 1983 for failure to state a claim.[9]

### B.   RLUIPA

### 1.   Individual- and official-capacity claims

Plaintiff brings RLUIPA claims against Defendants in their official and individual capacities. However, "there is no cause of action under RLUIPA for individual-capacity claims." *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012). Additionally, the

---

[9] If the Court declines to adopt the recommendation to dismiss without prejudice for failure to state a claim, the undersigned alternatively recommends dismissal (1) with prejudice of claims brought under § 1983 against all Defendants in their official capacities for monetary and retrospective injunctive relief, as they are not "persons" under the statute; and (2) without prejudice of claims brought under § 1983 against Defendants Harpe and Knutson, for failure to allege personal participation.

Eleventh Amendment bars RLUIPA claims for money damages and retrospective injunctive relief. *Sossamon v. Texas*, 563 U.S. 277, 280 (2011) (holding that sovereign immunity bars RLUIPA claims for monetary damages against states); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (explaining the Eleventh Amendment bars federal courts from "award[ing] retrospective relief"). Accordingly, RLUIPA is limited to official-capacity claims for prospective equitable relief. *Khan v. Barela*, 808 F. App'x 602, 605-06 (10th Cir. 2020); *Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015).

As such, Plaintiff's RLUIPA claims against Defendants in their individual capacities should be dismissed with prejudice. *See Shash v. City of Pueblo*, 770 F. Supp. 3d 1279, 1297 (D. Colo. 2025) (dismissing with prejudice RLUIPA claims brought against defendants in their individual capacities). And Plaintiff's RLUIPA claims against Defendants in their official capacities seeking monetary damages and retrospective injunctive relief should be dismissed without prejudice. *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (noting that "Eleventh Amendment immunity is jurisdictional" and dismissal should be "without prejudice").

### 2.    Substantial burden

In relevant part, RLUIPA provides that the government may not "impose a substantial burden on the religious exercise" of a prisoner "unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a). Thus, to successfully present a RLUIPA claim, Plaintiff must plausibly allege "he wishes to engage in (1) a religious

25

exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312 (10th Cir. 2010).

As set forth above, Plaintiff does not adequately allege a substantial burden to his sincerely held religious beliefs. *See Williams v. Hansen*, 5 F.4th 1129, 1133-34 (10th Cir. 2021) (explaining the standards determining "what constitutes a substantial burden" are the same under RLUIPA and the First Amendment's Free Exercise Clause). Accordingly, the undersigned recommends dismissal of Plaintiff's RLUIPA claims for failure to plausibly allege that denial of a hardbound hymnal substantially burdened his religious exercise.

### 3. Conclusion

The undersigned recommends the Court dismiss without prejudice claims brought under RLUIPA against all Defendants in their official capacities for monetary and retrospective injunctive relief, as barred by the Eleventh Amendment. The undersigned further recommends dismissing without prejudice all remaining claims brought under RLUIPA for failure to state a claim.[10]

### C. ORFA

Plaintiff brings state-law claims against Defendants in both their individual and official capacities alleging violation of ORFA. Doc. 1 at 1, 3, 5, 8, 16, 20.

---

[10] If the Court declines to adopt the recommendation to dismiss without prejudice for failure to state a claim, the undersigned alternatively recommends dismissal with prejudice of claims brought under RLUIPA against all Defendants in their individual capacities.

### 1.    Oklahoma Governmental Tort Claims Act

Defendants argue Plaintiff's claims under ORFA should be dismissed because Plaintiff failed to comply with the procedural requirements of the Oklahoma Governmental Tort Claims Act ("GTCA").  Doc. 22 at 11-13.  "To successfully bring a tort claim against the State of Oklahoma or one of its agencies, such as ODOC, an individual must comply with the notice and commencement provisions of the GTCA."  *Id.* at 12.  Defendants assert Plaintiff's ORFA claim "clearly falls within the requirements of the GTCA."  *Id.* at 13.  Defendants provide no support for this assertion and the undersigned questions its validity.

Another federal court in Oklahoma considered whether ORFA authorizes a tort action and determined it does not, concluding a "violation of the Oklahoma Religious Freedom Act does not give rise to tort liability, subject to the provisions of the Oklahoma Governmental Tort Claims Act."  *Shrum v. City of Coweta*, 558 F. Supp. 2d 1212, 1218 (E.D. Okla. 2008).  The undersigned concurs with that court's analysis and its conclusion that a plaintiff asserting ORFA claims is not bound by the notice and commencement provisions of the GTCA.

### 2.    Eleventh Amendment immunity

However, Plaintiff's official-capacity ORFA claims run into a different problem that, though not briefed by Defendants, the Court is obliged to consider.  *See, e.g., 1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party, and thus a court may sua sponte raise the question of whether there is subject matter jurisdiction at any stage in the

27

litigation." (citation modified)).  When jurisdiction exists on a federal claim, a federal district court generally has discretion to exercise supplemental jurisdiction over related state-claims.  *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  But a federal court may not exercise supplemental jurisdiction over a state law claim where such jurisdiction is prevented by the Eleventh Amendment.  *Wisdom Ministries, Inc. v. Garrett*, No. 23-5098, 2024 WL 3770934, at *4 (10th Cir. Aug. 13, 2024) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 122 (1984)).

As explained above, the Eleventh Amendment provides that a state cannot be sued in federal court unless it has consented to suit.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996).  The state of Oklahoma has not consented to suit in federal court under ORFA.  *Wisdom Ministries*, 2024 WL 3770934, at *4 ("The state law allows suit against a governmental entity, but doesn't say that the suit could proceed in federal court.  In the absence of such a statement, the Eleventh Amendment immunizes the State from federal litigation brought under the Oklahoma Religious Freedom Act.").  Accordingly, the Eleventh Amendment prevents the Court from exercising jurisdiction over Plaintiff's ORFA claim against Defendants in their official capacities.  As such, Plaintiff's ORFA claim against Defendants in their official capacities seeking monetary damages or retrospective injunctive relief should be dismissed without prejudice.  *See Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (noting that "Eleventh Amendment immunity is jurisdictional" and dismissal should be "without prejudice").

28

### 3.    Pendant state jurisdiction

Defendants have not briefed whether individual-capacity claims are permitted under ORFA.  However, even if such claims remain, and to the extent Plaintiff's ORFA claims for prospective injunctive relief against Defendants in their official capacities remain, the undersigned recommends the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims.

A federal district court may decline to exercise supplemental jurisdiction over state-law claims if it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3); *see also Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims." (citation modified)).  If the Court adopts the undersigned's recommendation to dismiss Plaintiff's federal claims, the Court should decline to exercise supplemental jurisdiction over his state-law claims.  *See Mahler v. Texas Cnty. Sheriff's Office*, No. CIV-25-481-D, 2025 WL 2971469, at *1 n.1 (W.D. Okla. Oct. 21, 2025) (declining to exercise supplemental jurisdiction over state-law claims when adopting recommendation to dismiss § 1983 claims).

### 4.    Conclusion

The undersigned recommends the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claims brought under ORFA.[11]

---

[11]  If the Court declines to adopt the recommendation not to exercise supplemental jurisdiction, the undersigned alternatively recommends dismissal without prejudice of

## IV.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends that the Court **GRANT** Defendants' Motion to Dismiss, Doc. 22, and **dismiss the Complaint without prejudice**. Specifically, the undersigned recommends

- dismissing without prejudice all claims brought against all Defendants under § 1983 and RLUIPA in their official capacities for monetary damages and retrospective injunctive relief, as barred by the Eleventh Amendment;

- dismissing without prejudice all remaining claims brought against all Defendants under § 1983 and RLUIPA for failure to state a claim; and

- declining to exercise supplemental jurisdiction over all state-law claims brought against all Defendants under ORFA.

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of Court not later than August 11, 2026. *See id.* § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 21st day of July, 2026.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE

---

ORFA claims against all Defendants in their official capacities for monetary damages and retrospective injunctive relief, as barred by the Eleventh Amendment.

30